UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
JULIAN CASTLE LOGAN (formerly       )
known as JOAO PEDRO BARBOSA JR.),   )
                                    )
                 Petitioner,        )
                                    )    CIVIL ACTION
           v.                       )    NO. 1:13-cv-11534-WGY
                                    )
BRUCE GELB,                         )
                                    )
                 Respondent.        )
_____)

YOUNG, D.J.                                   September 25, 2014

<u>MEMORANDUM AND ORDER</u>

## I.   INTRODUCTION

In this pro se petition for a writ of habeas corpus, the
petitioner, Julian Castle Logan (formerly known as Joao Pedro
Barbosa Jr.) ("Logan"), challenges his conviction in the
Massachusetts Superior Court sitting in and for the County of
Middlesex for deriving support from the earnings of a minor
prostitute.  He raises six grounds for the granting of the writ:
(1) that his trial counsel was ineffective in violation of the
Sixth Amendment by failing to object to hearsay testimony
regarding the age of the alleged prostitute; (2) that the
evidence offered by the government was insufficient to convict
him; (3) that an expert witness offering testimony regarding
prostitutes' work habits and relationships with their pimps was
not qualified to do so; (4) that the same expert witness

impermissibly based his testimony on hearsay; (5) that the Commonwealth impermissibly used this expert's opinion testimony as substantive evidence against Logan; and (6) that the fruits of local police officers' investigations outside their jurisdiction should be suppressed.

## A. Massachusetts Superior Court Proceedings

In Commonwealth v. Barbosa, 76 Mass. App. Ct. 1115, 2010 WL 680349 (Mar. 1, 2010), the Massachusetts Appeals Court ("Appeals Court") described the underlying facts of this case, which this Court now "supplement[s] with other record facts consistent with the [court's] findings." Yeboah-Sefah v. Ficco, 556 F.3d 53, 62 (1st Cir. 2009) (quoting Healy v. Spencer, 453 F.3d 21, 22 (1st Cir. 2006)).

> On the evening of February 23, 2004, Detective Lawrence Hall [("Hall")] of the Everett police department was on Beecham Street in Everett, an area known by the police to be frequented by prostitutes. Hall saw two young women walking down the road smiling and waving at passing vehicles, consistent with invitations for the persons in the vehicles to stop. At one point, the women walked over to the parking lot of a nearby club, and the two women entered the back seat of a gray Saab convertible. (As shall be further described, the defendant was arrested in a gray Saab convertible.)
>
> The following night, February 24, 2004, Detective Hall observed one of the same two women, later identified as Harriet [a pseudonym], again, out on the street, waving and smiling at passing vehicles on Beecham Street. A large delivery truck pulled over next to Harriet and she got in. The truck drove across the boundary line from Chelsea, where Harriet had been picked up, into Everett, then back into Chelsea. The

2

truck stopped on a desolate side road.  After trying
to no avail to contact the Chelsea police and the
State police, Detective Richard Connor [("Connor")] of
the Everett police department, also conducting
surveillance in the area, observed Harriet performing
oral sex on the driver.

Harriet was dropped off on Beecham Street and spoke
briefly on a walkie-talkie.  Thereafter, a large white
sedan pulled up, and Harriet got in.  The sedan drove
to another desolate area.  The police could not
conduct direct surveillance to see what happened
inside the white sedan.  However, ten minutes later,
the sedan returned to a vantage point from which the
police saw Harriet get out of the car and again walk
over to a gray Saab convertible parked in the same lot
where the Saab had been the previous night.  The Saab
drove away.  Hall radioed for a cruiser to stop the
car.  The defendant, who was driving the Saab, was
arrested.

Barbosa, 2010 WL 680349 at *1.  Logan was subsequently charged

with violating, inter alia, Mass. Gen. Laws ch. 272, section 4B,

which criminalizes deriving support from the earnings of a minor

prostitute.  Pet. Relief Conviction Sentence Person State

Custody ("Pet.") 2, ECF No. 1.  An initial trial, running from

August 20 to 22, 2007, ended in a mistrial due to a hung jury.

Pet., Ex. 1, Def. Barbosa's Mot. New Trial & Incorporated Mem.

Law ("Mot. New Trial") 1, ECF No. 1-1.  Logan's second trial ran

from September 3 to 6, 2007.  Id.  There, in addition to

testifying to the facts stated above,

Detective Hall testified that he had been on the
police force for more than ten years and had spent the
previous five years specializing in narcotics and
prostitution investigations.  Hall testified that he
had made between sixty and seventy prostitution
arrests over the course of his career.  Hall was

qualified as an expert and testified that, at the time
of the events in question, the average price for
prostitution services of oral sex was between $40 and
$60, and for vaginal intercourse was $100 or more.
When the defendant was arrested in the gray Saab
convertible on the second night of the police
surveillance, the defendant had $1,459 in cash on his
person.  Harriet, who was also arrested, had $32 in
cash on her person.

A social worker, [Rosa Andrade ("Andrade"),] without
any objection, testified that Harriet's birthday was
November 21, 1988, and that she was fifteen years old
on February 24, 2004.

Barbosa, 2010 WL 680349 at *1-2.  Andrade further testified that

she works with adolescents and that Harriet was an adolescent.

Supplemental Ans., Tab 13, Trial Tr. vol. 1, 22:24-23:18, Sept.

5, 2007.[1]  She had worked with Harriet for two years, beginning

approximately one year after the incident for which Logan was on

trial, see id. at 24:10-13; during her time with Harriet,

Andrade helped her with placements, school, and "any other

services that pertained to her well being," id. at 23:9-20.  On

cross-examination, Andrade admitted that she had never seen

Harriet's birth certificate and that Harriet was born outside

the United States.  Id. at 25:21-26:5.  At no point during the

trial did Harriet herself testify.  See Apr. 4, 2014 Mem. Law

Supp. 28 U.S.C. § 2254 Pet. ("Pet.'s Supp. Mem.") 1, ECF No. 71.

---

[1] This document, comprising Gelb's supplemental answer to
Logan's petition and containing (inter alia) transcripts of the
Massachusetts Superior Court proceedings against Logan, was
provided to the Court in hard copy by the Office of the Attorney
General of the Commonwealth. It has not been electronically
docketed in the instant proceedings.

Prior to the close of the defense's case, Logan moved for a required finding of not guilty based on the insufficiency of this evidence of Harriet's age. Supplemental Ans., Tab 14, Trial Tr. vol. 2, 40:14-41:4, Sept. 6, 2007. The motion was denied, though the trial judge noted that it was a "close call." Id. at 49:14-19. The jury convicted Logan on September 6, Pet. 2, and on September 11, Logan filed a motion for judgment notwithstanding the verdict, which was also denied, Mot. New Trial 1. On September 20, Logan was given a prison sentence of between five and eight years, which he is currently serving out at the Souza-Baranowski Correctional Center. Pet. 2.

### B. Logan's Direct Appeal

Logan filed a timely appeal, arguing two grounds for reversal: first, that the trial court should have granted his motion for a required finding of not guilty, and second, that the court should have excluded the testimony of Everett police detectives Hall and Connor regarding their observations in Chelsea as evidence gathered pursuant to an investigation made outside the geographical scope of their authority. Barbosa, 2010 WL 680349 at *1-2.

On March 10, 2010, the Appeals Court affirmed Logan's conviction. Id. at *1. The court held that the trial testimony of Andrade, Hall, and Connor was "sufficient direct and circumstantial evidence that (1) Harriet was engaged in

prostitution; (2) she was a minor; (3) the defendant knew Harriet was engaged in prostitution; and (4) the defendant derived support or shared in the monetary proceeds of prostitution, knowing that such proceeds were from the prostitution of Harriet." Id. at *2 (citing Commonwealth v. Asmeron, 70 Mass. App. Ct. 667, 672 (2007)). The court further observed that circumstantial evidence may properly support a finding of guilt beyond a reasonable doubt, and that inferences from circumstantial evidence need not be inevitable in order to support such a verdict. Id. (citing Commonwealth v. Merola, 405 Mass. 529, 533 (1989); Commonwealth v. Beckett, 373 Mass. 329, 341 (1977)). Regarding Logan's second ground for appeal, the court noted that while police officers do have limited geographic authority to make stops and arrests, Hall and Connor only testified as "percipient witness[es]" regarding events in Chelsea, which is permissible under state law. Id. ("An officer may testify to events observed, even if the observations are made outside any town or city for which the officer works or where the officer has authority to arrest."). On September 10, 2010, the Massachusetts Supreme Judicial Court ("SJC") denied Logan's application for leave to obtain further appellate review. Commonwealth v. Barbosa, 458 Mass. 1101 (2010).

**C.  Logan's Motion for New Trial and Appeal**

Logan filed a motion for a new trial on November 11, 2011. See Resp't's Mem. Opp'n Pet. Writ Habeas Corpus ("Resp't's Mem.") 3, ECF No. 74.  His motion for a new trial focused on five issues: (1) a claim that Logan's trial counsel was constitutionally ineffective because he failed to object to Andrade's testimony regarding Harriet's date of birth as hearsay, thus allowing in noncumulative evidence of an element of the crime, Mot. New Trial 10-11; (2) a claim that Logan's trial counsel was ineffective because he failed to investigate Logan's claim that the $1459 found on his person at the time of his arrest came from a legitimate source, thus undercutting the Commonwealth's evidence that he received support from Harriet's prostitution, id. at 11-13; (3) a claim that Hall's expert testimony was, in essence, impermissible hearsay from out-of-court conversations with arrested prostitutes repackaged as expert opinion, id. at 13-18; (4) a claim that Hall blurred the lines between his roles as fact and expert witness and that the Commonwealth improperly used Hall's expert testimony as direct substantive evidence of Logan's guilt, id. at 18-22; and (5) a claim that Hall was not qualified to serve as an expert regarding typical prostitution practices, id. at 23.  This motion for a new trial was denied in the Massachusetts Superior

Court eleven days after it was filed, and Logan subsequently appealed this denial. Resp't's Mem. 3.

The Appeals Court affirmed the denial of Logan's motion for a new trial on March 19, 2013. Commonwealth v. Barbosa, 83 Mass. App. Ct. 1119, 2013 WL 1103912 at *1 (March 19, 2013). Regarding Logan's claim of ineffective assistance of counsel due to failure to object to hearsay, the court noted that because the issue had been addressed on direct appeal (albeit in the context of whether Andrade's evidence had been sufficient to support a conviction), "it may be inferred that the defendant's claim of ineffective assistance of counsel was considered and rejected." Id. at *2 (citing Commonwealth v. Gambora, 457 Mass. 715, 731 n.24 (2010) (noting that, in a case where the trial court had already admitted evidence as relevant over defense counsel's objection, defense counsel was not ineffective for failing to file a futile motion to strike)). The court rejected the second ineffective assistance of counsel claim as well, ruling that the motion judge was within her discretion to disbelieve Logan's assertion that he had explained to his trial counsel the legitimate source of the cash he was carrying at the time of arrest, particularly given that Logan failed to provide even the name of the attorney he allegedly told. Id.

Turning to the three claims relating to Hall's testimony, the court noted that because none had been raised on direct

appeal, the claims were waived and could only warrant a new
trial if they gave rise to "a substantial risk of a miscarriage
of justice," which the court found was not the case.  Id. at *1;
see also Commonwealth v. Randolph, 438 Mass. 290, 293-95 (2002)
(affirming this standard for review of a waived ground for post-
conviction relief, and stating that failure to raise a known
ground for relief on direct appeal constitutes a waiver).  Under
this standard, the court ruled that the trial judge's
qualification of Hall as an expert was well supported by the
evidence, that Hall's testimony was a sufficient synthesis of
the alleged hearsay statements such that it did not create a
risk of a miscarriage of justice, and that Hall's expert
testimony was sufficiently distinct from his fact testimony as
to be permissible.  Id. at *1-2.  Logan filed an application for
further appellate review with the SJC, which denied the
application on June 6.  Commonwealth v. Barbosa, 465 Mass. 1105
(2013).

### D.  Federal Habeas Petition

On June 26, 2013, Logan filed a petition for writ of habeas
corpus in the U.S. District Court for the District of
Massachusetts.  Pet.  He proposes six grounds for relief,
raising claims that his counsel was constitutionally
ineffective, id. at 6, that there was insufficient evidence to
convict him, id. at 8, and that the police testimony against him

was inadmissible for a variety of reasons, see id. at 9, 11, 13,
14.  On behalf of the Commonwealth, the Respondent Bruce Gelb
filed a memorandum in opposition to Logan's petition on May 23,
2014.  Resp't's Mem.  Logan filed a reply on June 3, 2014.
Pet'r's Traverse Reply Resp't's Ans., ECF No. 75.  The Court
also notes that on October 15, 2013, Logan filed a motion for
summary judgment on his petition.  Mot. Supp. Summ. J., ECF No.
30.

## II.  ANALYSIS

### A.  Legal Standards

#### 1.  Habeas, AEDPA, and Procedural Default

Petitions in federal court seeking habeas relief from state
convictions are subject to the Antiterrorism and Effective Death
Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214 (1996).  This
"formidable barrier to . . . relief," Burt v. Titlow, 134 S. Ct.
10, 16 (2013), states in relevant part that:

> An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a
> State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the
> claim-
>
> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) ("Section 2254(d)").  Under the first prong

of Section 2254(d)(1), habeas relief may be granted if the state

court's last adjudication on the merits uses a rule of law "that

contradicts the governing law set forth in [Supreme Court]

cases" or "if the state court confronts facts that are

materially indistinguishable from a relevant Supreme Court

precedent and arrives at a[n] . . . opposite" result.  Williams

v. Taylor, 529 U.S. 362, 405 (2000); see also Companonio v.

O'Brien, 672 F.3d 101, 109 (1st Cir. 2012).  The second prong,

meanwhile, applies when "the state court identifies the correct

governing legal principle from [the Supreme Court]'s decisions

but unreasonably applies that principle to the facts of the

prisoner's case."  Williams, 529 U.S. at 413.  This prong also

reaches situations in which the state court "unreasonably

extends clearly established legal principles to a new context

where they should not apply[,] or . . . unreasonably refuses to

extend established principles to a new context where they should

apply."  Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007)

(citing L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002)).  In

this context, unreasonableness must transcend mere incorrectness

in order for relief to be warranted.  To be unreasonable, the

state court decision must feature "'some increment of

incorrectness beyond error' that is 'great enough to make the

decision unreasonable in the independent objective judgment of the federal court.'" Evans v. Thompson, 465 F. Supp. 2d 62, 67 (D. Mass. 2006) (quoting Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003)), aff'd, 518 F.3d 1 (1st Cir. 2008); see also Cullen v. Pinholster, 131 S. Ct. 1388, 1426 (2011) ("When § 2254(d)(1) applies, the question is whether 'fairminded jurists could disagree on the correctness of the state court's decision.'" (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786 (2011))).

Outside the bounds of AEDPA and Section 2254(d) (which apply only to state court judgments on the merits of an issue), a state conviction may evade federal habeas review entirely if the prisoner has failed to meet a state procedural requirement while petitioning the state court for relief on federal grounds, as this procedural default is an independent and adequate state ground for the state court's judgment. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). Relevant to the instant case, failure to raise an issue on direct appeal when that issue was knowable at the time of that appeal constitutes a waiver of the issue, which is a procedural default for the purposes of habeas analysis. See, e.g., Decicco v. Spencer, 96 F. App'x 730, 732-33 (1st Cir. 2004). The Massachusetts practice of courts providing limited review of waived claims to address the risk of a miscarriage of justice does not itself count as the

Commonwealth waiving a defendant's procedural default.  Burks v.
Dubois, 55 F.3d 712, 716 n.2 (1st Cir. 1995).  To obtain relief
on a claim that has been procedurally defaulted, a petitioner
must "demonstrate cause for the default and actual prejudice as
a result of the alleged violation of federal law, or demonstrate
that failure to consider the claims will result in a fundamental
miscarriage of justice."  Coleman, 501 U.S. at 750.  The cause
requirement must be satisfied by "some objective factor external
to the defense which impeded counsel's efforts to comply with
the State procedural rule."  Lynch v. Ficco, 438 F.3d 35, 46
(1st Cir. 2006) (quoting Murray v. Carrier, 477 U.S. 478, 488
(1986)) (internal quotation marks omitted).  Attorney error can
constitute a cause of default under this standard only if it
satisfies the Strickland test for constitutional deficiency,
discussed below.  See Martinez v. Ryan, 132 S. Ct. 1309, 1318
(2012); Murray, 477 U.S. at 488-89.  Further, to qualify as
cause, the issue of constitutional ineffectiveness regarding
each alleged attorney error must have been actually exhausted on
its own – that is to say, arguments that attorney error was a
proper cause for a procedural default may themselves be
procedurally defaulted.  See Edwards v. Carpenter, 529 U.S. 446,
452-54 (2000).  In the absence of cause and prejudice, a
procedural default may be excused only if there is a fundamental
miscarriage of justice, which is limited to circumstances where

the alleged constitutional violation has probably resulted in the conviction of an innocent person.  Coleman, 501 U.S. at 748 (quoting Murray, 477 U.S. at 496).

### 2.   Ineffective Assistance of Counsel

A defendant alleging that his Sixth Amendment right to counsel was violated by virtue of his counsel's ineffectiveness must satisfy the two-part test handed down by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  The first part of the test asks whether the attorney's challenged "acts or omissions were outside the wide range of professionally competent assistance. . . . [T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id. at 690.  In the habeas context, the combination of this deference to attorney conduct and the deference given to state judgments on the merits under AEDPA makes "[e]stablishing that a state court's application of Strickland was unreasonable under [Section] 2254(d) . . . all the more difficult."  Harrington, 131 S. Ct. at 788.

The second part of the Strickland test evaluates the prejudicial effect of the attorney's error.  The Court must ask "whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Padilla v. Kentucky, 559 U.S. 356,

366 (2010) (quoting Strickland, 466 U.S. at 694).  Courts need

not analyze both parts of the Strickland test; if a prejudice

analysis alone is enough to dispose of a claim of ineffective

assistance of counsel without requiring the court to "grade

counsel's performance," the prejudice prong of the test may be

approached first.  466 U.S. at 697.

### 3.  Sufficiency of Evidence

A court evaluating a federal claim that the government has

provided insufficient evidence to support a conviction must ask

"whether, after viewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt."

Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Similar to the

double deference applied in Strickland claims under habeas

review, the deference given to factfinders under the Jackson

standard is compounded by the deference given to state courts

when sufficiency of the evidence claims are raised in federal

habeas proceedings stemming from state convictions.  See Coleman

v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam).  In

Massachusetts, courts (including the Appeals Court in the direct

appeal of the conviction in this case) hearing these claims use

the similar Commonwealth v. Latimore standard, see 378 Mass. 671

(1979), which is at least as protective of defendants as is

Jackson.  See Leftwich v. Maloney, 532 F.3d 20, 23-24 (1st Cir.

15

2008).  Accordingly, Massachusetts courts applying the state
Latimore standard may still receive deference from federal
courts reviewing habeas petitions under Section 2254(d).  Id.

**B.  Logan's Grounds for Relief**

**1.  Ineffective Assistance of Counsel**

Logan argues that the only evidence proving Harriet was a
minor – an essential element of the crime for which he was
convicted – was Andrade's testimony regarding Harriet's
birthday.  Because Andrade had not seen Harriet's birth
certificate, Logan alleges that the only way that she could have
known this information was if Harriet had told her herself;
this, as an out-of-court statement being offered for the truth
of the matter asserted, would be quintessential hearsay.  See
Pet. 6; Pet.'s Supp. Mem. 1-3.  Logan further argues that his
trial counsel was constitutionally ineffective for failing to
object to this testimony as hearsay for, without this evidence,
the Commonwealth would be unable to prove all elements of the
crime and thus would have been constitutionally unable to
convict.  See Pet. 6, Pet.'s Supp. Mem. 1-3.

The Commonwealth's response brief charts the evolution of
this claim and its relationship with Logan's related claim that
the evidence offered at trial was insufficient to support his
conviction.  During his direct appeal, Logan did not raise the
ineffectiveness of his trial counsel for failure to object to

hearsay as a freestanding issue, although he did allude to it
briefly in his argument regarding sufficiency. Resp't's Mem. 9
(citing Supplemental Ans., Tab 1, Br. & Record App'x Appellant
Joao Barbosa 40-41, Barbosa, 2010 WL 680349). His Strickland
claim was raised as a distinct ground for relief for the first
time in Logan's motion for a new trial. See Mot. New Trial 10.
In analyzing the appeal from the denial of this motion, the
Appeals Court held that the rejection of Logan's direct appeal
regarding sufficiency of the evidence was a tacit rejection of
his ineffective assistance of counsel claim as well. Barbosa,
2013 WL 1103912 at *2 (citing Gambora, 457 Mass. at 731 n.24).
This second holding, the Commonwealth argues, compels this Court
to reject an ineffective assistance claim in Logan's habeas
petition as well. See Resp't's Mem. 10.

The Court is not fully persuaded that the Appeals Court
ever did decide the Strickland issue on the merits,[2] but this is

_____

[2] The Court's skepticism on this point stems largely from
critical distinctions between the instant case and Gambora, the
case the Appeals Court relied on in holding that Logan's claim
had been implicitly considered and rejected. In Gambora, the
trial judge admitted evidence regarding a shoe print over
defense counsel's relevancy objection. 457 Mass. at 730-31. On
appeal, the defendant claimed that his counsel's subsequent
failure to move to strike the evidence constituted ineffective
assistance of counsel. Id. at 731 n.24. The SJC rejected this
argument; because the trial court had already squarely decided
the issue of relevance, it would have been futile for defense
counsel to move to strike, as failing to make a futile motion
could not support a Strickland claim. Id.

immaterial – no matter which way one approaches the question,

Logan's petition cannot be granted on this ground.  If the

Appeals Court did indeed implicitly reject the <u>Strickland</u> claim

in the original appeal, then that constitutes a decision on the

merits that triggers Section 2254(d) of AEDPA.  Turning to the

first prong, which asks whether the state court's decision was

contrary to established federal law, it is impossible to say

what rule of law the Appeals Court applied in rejecting this

claim, given that any such rejection was sub rosa.  Accordingly,

this Court has no basis for evaluating whether the Appeals Court

employed a rule "contrary to" established Supreme Court law on

this matter.  Regarding the second part of Section 2254(d)

regarding whether the state court decision being challenged was

---

Unlike in <u>Gambora</u>, where counsel's alleged failure was coterminous with an issue already decided by the court, the failure that Logan alleges does not overlap quite so neatly with the Appeals Court's analysis of his direct appeal.  That court decided the issue of whether Logan's conviction could be supported by the evidence <u>as admitted</u>; it treats as given that Andrade's testimony regarding <u>Harriet</u>'s birthday could be considered by the jury.  <u>See Barbosa</u>, 2010 WL 680349 at *2. Logan's <u>Strickland</u> claim is orthogonal to this inquiry, as it hinges not on whether the evidence was sufficient as admitted, but on whether the evidence in question should have been admitted in the first place.  Accordingly, this Court is not certain that the courts of the Commonwealth ever did deal with the <u>Strickland</u> claim directly.

The only thing that gives the Court pause is the fact that Logan did include scattered references to the ineffective assistance of counsel issue in his direct appeal briefing on the question of sufficiency.  <u>See</u> Resp't's Mem. 9.  Ultimately, however, because the issue does not affect this Court's holding, this Court need not determine conclusively whether the Appeals Court decided the <u>Strickland</u> issue on the merits or not.

an unreasonable application of federal law, and given the

multiple layers of deference that inhere when a court views the

already deferential Strickland standard through the AEDPA lens,

this Court rules that the Appeals Court was reasonable in

concluding that Logan's counsel was not constitutionally

ineffective.  Even a non-deferential analysis of this claim

compels the same conclusion.

Setting aside AEDPA's deference to state court decisions,

Logan's ineffective assistance of counsel claim still fails the

prejudice prong of the Strickland test.[3]  Even if Logan's counsel

---

[3] This Court need not rely on an analysis of Logan's
counsel's purported deficiency, as his ineffective assistance
claim may be disposed of simply by looking at the prejudice part
of the test.  See Strickland, 466 U.S. at 697.  There is,
however, a plausible argument that Logan's claim fails the
deficiency prong as well.
    Counsel cannot be found deficient for failing to pursue a
futile tactic.  See, e.g., Vieux v. Pepe, 184 F.3d 59, 64 (1st
Cir. 1999); Breese v. Commonwealth, 415 Mass. 249, 256 (1993).
One such example of futility would be making a hearsay objection
to testimony regarding an out-of-court statement that falls
within a hearsay exception.  Cf. Lynch v. Ficco, CIV.A.04-10502-
RWZ, 2004 WL 3091174 at *2 (D. Mass. Dec. 16, 2004) (Zobel, J.)
(noting that it would be futile to attempt to introduce hearsay
testimony that does not fall within an exception), aff'd, 438
F.3d 35 (1st Cir. 2006).  Andrade's testimony regarding
Harriet's birthday possibly could have been admitted under Mass.
G. Evid. § 804(b)(4)(A), which allows third parties to testify
to any statements made by an unavailable declarant regarding
their own birth.  Andrade testified that she learned of
Harriet's birthday "during the course of [her] relationship with
[Harriet]," which (given that Andrade had never seen Harriet's
birth certificate) indicates that Andrade most likely learned
this information from Harriet herself.  Trial Tr. vol. 1, 23:14-
16.

19

had successfully had Harriet's date of birth stricken from the
record of Andrade's testimony as hearsay, there was still ample
evidence that would have permitted the jury to conclude beyond a
reasonable doubt that Harriet was a minor.  Andrade testified
that she was an "adolescent social worker," Trial Tr. vol. 1,
22:25, and that Harriet was "an adolescent assigned to [her]

---

     Consequently, the admissibility of Andrade's statement
would hinge on whether Harriet was unavailable to serve as a
witness.  Unavailability is defined in relevant part as a
situation in which "the declarant . . . is absent from the
hearing and the proponent of a statement has been unable to
procure the declarant's attendance by process or other
reasonable means." Mass. G. Evid. § 804(a)(5).  The record
indicates that Harriet was an uncooperative witness and that the
Commonwealth, the party seeking to introduce Harriet's out-of-
court statement, had attempted to contact Harriet by phone for a
week and a half with no success.  Trial Tr. vol. 2, 56:11-24.
The trial court in this case, however, granted the defense a
missing witness jury instruction allowing the jury to draw
inferences against the Commonwealth from Harriet's absence, as
Andrade purportedly had Harriet's address and the Commonwealth
did not try to compel Harriet's presence via a subpoena or court
order.  Id.  Despite this, considering the wide latitude given
to attorneys under the deferential Strickland standard, it is
possible that an attorney acting within the bounds of reason
would believe that Harriet qualified as unavailable -- thus
rendering Andrade's testimony admissible, an objection to it
futile, and the attorney's failure to make such an objection
constitutionally permissible.
     The Court further notes that this unavailability analysis
would be unnecessary under the Federal Rules of Evidence, as
Fed. R. Evid. 803(19) creates a hearsay exception allowing "a
person's associates" to testify regarding the reputation
concerning that person's birth, regardless of the subject's
availability.  Andrade, as Harriet's social worker of two years,
likely would have qualified as such an associate competent to
testify to this issue.  The Massachusetts analog to this rule –
Mass. G. Evid. § 803(19) – is limited to family members,
however, meaning that Andrade's testimony would have to come in
under Rule 804(b)(4)(A) instead.

caseload," id. at 23:8; she further testified that part of her duties involved helping Harriet with issues at school, id. at 23:10-13. The jury also saw a photograph of Harriet taken approximately one year prior to the date of Logan's arrest. See id. at 23:24-24:12 (dating the photograph to approximately January 2003). The prejudice prong of the Strickland test requires Logan to show that there is a reasonable probability that, but for the alleged constitutional deficiency, the outcome of the trial would have changed. Logan has failed to meet this burden: this Court is not persuaded that there is a reasonable probability that, in the face of all of this testimony, striking Andrade's purported hearsay would have been enough to cast doubt on the jury's finding that Harriet was a minor. Consequently, Logan was not prejudiced by his counsel's alleged deficiency, and his habeas petition cannot be granted on that ground.

### 2. Hall's Testimony

Logan further offers three grounds for his petition arising from the testimony offered by Everett police detective Hall. Logan argues that Hall should not have been qualified as an expert, that Hall's testimony was simply repackaged inadmissible hearsay from women he had encountered during prostitution investigations, and that the Commonwealth improperly used Hall's expert testimony as direct evidence of Logan's guilt. Pet. 9, 11. The Commonwealth responds by arguing that each of these

grounds has been procedurally defaulted, as Logan failed to raise them at various critical stages of either his direct appeal or motion for a new trial. <u>See</u> Resp't's Mem. 14-17. Two of these grounds were raised for the first time in the motion for a new trial rather than on direct appeal, while the third ground was not raised until the appeal of the rejection of that motion. <u>See</u> <u>Barbosa</u>, 2013 WL 1103912 at \*1 & n.1. Because a procedural default of this kind serves as an independent state law ground for the state court's judgment, this Court cannot review Logan's defaulted claims unless either the cause-and-prejudice test for excusing a procedural default is satisfied, or the denial of his petition raises the specter of a miscarriage of justice – that is to say, if the alleged constitutional error resulted in the conviction of someone who was most likely innocent of the crime charged.

Logan states that these three grounds for his petition were not raised on direct appeal because they were overlooked by his counsel at that stage. <u>See</u> Pet. 10, 11, 13. This attorney error can only excuse the default of the claims related to Hall's testimony if (1) the error was constitutionally ineffective under <u>Strickland</u>, <u>see</u> <u>Martinez</u>, 132 S. Ct. at 1318, and (2) that ineffectiveness was itself litigated and exhausted in the courts below, <u>see</u> <u>Edwards</u>, 529 U.S. at 451-52. This Court need not evaluate whether Logan's counsel on his direct

appeal was actually deficient, as Logan has not previously
argued that his counsel's failure to raise the issues regarding
Hall's testimony amounted to unconstitutional ineffective
assistance. See Barbosa, 2010 WL 680349 at *1-2 (showing no
ineffective assistance of counsel claims argued before the court
during the direct appeal); Mot. New Trial 10-13 (arguing during
the motion for a new trial that the original counsel was
ineffective at trial for failing to object to hearsay and for
failing to investigate alternate sources for the cash on Logan's
person, but not raising claims of ineffectiveness with respect
to Hall's testimony); id. at 13-23 (asserting problems with
Hall's testimony without mentioning the ineffectiveness of
counsel during the direct appeal). Accordingly, the issue of
the failure of Logan's counsel to raise these issues on direct
appeal is itself defaulted and cannot serve as cause to excuse
these claims' procedural default.

Because Logan cannot meet the cause-and-prejudice test,
this Court can only review these grounds for his petition if
failure to do so creates a substantial risk of a miscarriage of
justice. See Coleman, 501 U.S. at 750. In reviewing Logan's
appeal from the rejection of his motion for a new trial, the
Appeals Court applied a state analog to this miscarriage rule,
finding that no such substantial risk arose from the admission
of Hall's testimony. See Barbosa, 2013 WL 1103912 at *1-2.

This Court agrees with the Appeals Court's assessment, as Logan's arguments attacking Hall's testimony fail to demonstrate actual constitutional violations (let alone ones that likely resulted in the conviction of an innocent person).

The Appeals Court concluded that Hall's long experience in investigating prostitution amply qualified him as an expert, despite the fact that he has not published or lectured in the field. Id. at *1; cf. Rivera v. City of Worcester, No. 12-40066-TSH, 2014 WL 2781338 at *4 (D. Mass. June 17, 2014) (Hennessy, M.J.) ("A law enforcement officer's testimony satisfies the Daubert [v. Merrell Dow Pharm., 509 U.S. 579 (1993),] reliability requirement if the officer is qualified by training and experience to offer an opinion." (quoting United States v. Motsenbocker, No. CR-10-371-D, 2011 WL 902121 at *2 (W.D. Okla. Mar. 15, 2011))). Indeed, at least under Mass. G. Evid. § 701, Hall may not have even needed to be qualified as an expert under Mass. G. Evid. § 702 in order to offer the testimony he gave. Cf. United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir. 2005) (holding that a police officer gave proper lay opinion testimony when he testified regarding how drug distribution points usually work and how heroin is usually packaged). Courts and commentators, however, are deeply divided over the propriety of so-called law enforcement experts. See, e.g., Brian R. Gallini, To Serve and Protect? Officers as

*Expert Witnesses in Federal Drug Prosecutions*, 19 Geo. Mason L. Rev. 363 (2012); Joëlle Anne Moreno, *What Happens When Dirty Harry Becomes an (Expert) Witness for the Prosecution?*, 79 Tul. L. Rev. 1 (2004); Deon J. Nossel, Note, *The Admissibility of Ultimate Issue Expert Testimony by Law Enforcement Officers in Criminal Trials*, 93 Colum. L. Rev. 231; *cf.* *United States* v. *Hermanek*, 289 F.3d 1076, 1092-96 (9th Cir. 2002) (carrying out a rigorous *Daubert* expert qualification analysis of a law enforcement officer and ruling that the officer was not qualified); *United States* v. *Green*, 405 F. Supp. 2d 104, 117-24 (D. Mass. 2005) (Gertner, J.) (similar).

Whatever this Court may itself think of Hall as an "expert," however, it is apparent that here he did not directly repeat any inadmissible hearsay statements made by women he encountered during prostitution investigations. Much like the testimony of a rape trauma counselor, *see, e.g.*, *Commonwealth* v. *Mamay*, 407 Mass. 412, 421-22 (1990), or one skilled in analyzing battered women's or children's syndrome, *see, e.g.*, *Commonwealth* v. *Morris*, 82 Mass. App. Ct. 427, 430-33 (2012), Hall's testimony represents a synthesis of information learned during these conversations into more generalized patterns, viewed through the lens of his lengthy experience. *See* *Barbosa*, 2013 WL 1103912 at *1. Most importantly, the Commonwealth did not use Hall's expert testimony as direct evidence of Logan's guilt, as

Logan alleges; instead, it permissibly used that testimony as the yardstick against which other evidence directly pertaining to Logan was measured.[4]  See Trial Tr. vol. 2, 87:22-96:3 (showing the prosecutor repeatedly referencing Hall's testimony describing typical pimp-prostitute relationships, then showing how other evidence directly pertaining to Logan fit that model).

Thus, because nothing Logan has alleged regarding Hall's testimony was actually impermissible, this Court cannot rule that a constitutional error resulted in the conviction of an innocent person or that there was a miscarriage of justice, nor can the Court grant this petition on (or even directly review) the grounds that Logan has procedurally defaulted.

### 3.  Sufficiency of Evidence Supporting a Conviction

Logan also argues that this Court ought grant his habeas petition because the evidence used to convict him was legally insufficient.  Pet. 8.  He seeks to distinguish his case from those relied on by the Appeals Court in rejecting this same

---

[4] Logan argues that this violated the jury instruction of the experienced trial judge barring Hall's opinion testimony from being considered as "substantive proof of guilt," Pet.'s Supp. Mem. 20, but this argument misunderstands the role of expert testimony.  This instruction does not mean that the Commonwealth cannot use the expert testimony to aid its case against the defendant - indeed, such a rule would defeat the purpose of having expert witnesses entirely.  Rather, it simply means that the jury may not look solely to Hall's generalized patterns to determine the individual defendant's guilt; it may only use those patterns as a way of understanding other evidence that pertains directly to the defendant himself.

argument on direct appeal, see Pet's Supp. Mem. 4-6, and he further cites to cases in Massachusetts and Louisiana state courts in which evidence similar to that adduced in his own case was found insufficient to support a conviction for a substantially similar crime. See id. at 6-9. He also points to the trial judge's statement that deciding Logan's motion for a required verdict of not guilty presented a "close call," arguing that this level of certitude fell short of the constitutional due process standard. See id. at 7-9. In response, the Commonwealth states that the Appeals Court squarely decided the issue of the sufficiency of the evidence on the merits in a way that was not contrary to, nor an unreasonable application of, the Supreme Court's decision in Jackson v. Virginia, thus barring this Court from granting Logan's petition under the stringent standards set by Section 2254(d)(1). See Resp't's Mem. 10-13.

The Commonwealth has the better of the argument. Because the Appeals Court squarely decided the issue when they affirmed Logan's conviction on direct appeal, see Barbosa, 2010 WL 680349 at *1-2, this Court must review that decision under the deferential standard required by AEDPA's Section 2254(d).[5] This

_____

[5] There is also a plausible argument that this ground for Logan's petition is procedurally defaulted, as he failed to raise it during collateral proceedings in his motion for a new trial before the state courts. See Mot. New Trial. Logan

requires the Court to deny Logan's petition unless the Appeals Court's decision rejecting this argument was contrary to or an unreasonable application of the governing federal law as handed down by the Supreme Court.  Here, the relevant standard for sufficiency of the evidence to support a conviction is articulated in <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. at 319 (instructing courts to ask "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").  The Appeals Court's decision on direct appeal cannot be said to be contrary to <u>Jackson</u>, as that court used a parallel state standard previously ruled by federal courts to be at least as protective of defendants as the federal one.  <u>See</u> <u>Leftwich</u>, 532 F.3d at 23-24.  Thus, Logan's writ can only be granted on this ground if the Appeals Court was unreasonable in ruling the <u>Jackson</u> standard satisfied for each element of the crime – that Harriet was engaged in prostitution, that she was a minor, that Logan knew Harriet was engaged in prostitution, and that he shared in the monetary proceeds of this prostitution.  This is a high bar for Logan to clear, as it

_____

offers no justification sufficient to meet the cause-and-prejudice test for excusing such a default.  <u>See</u> Pet. 8-9.  This Court need not determine whether this ground is procedurally defaulted, however, because this ground cannot support the granting of the writ even if it is permitted to be brought before the Court here.

involves both deference to the Appeals Court and a permissive standard that allows a conviction to stand if _any_ rational trier of fact would have found Logan guilty beyond a reasonable doubt.

The Appeals Court was certainly not unreasonable in ruling the sufficiency standard satisfied, as there is more than enough circumstantial evidence of Logan's guilt to permit a reasonable trier of fact to convict him. Testifying police detectives saw Harriet beckoning passing cars, getting into two vehicles, and performing oral sex on the driver of one of those vehicles on a deserted side road – conduct consistent with her being engaged in prostitution. _Barbosa_, 2010 WL 680349 at *1. Harriet's use of a walkie-talkie between encounters, _id._, and the discovery of the matching walkie-talkie in Logan's possession, Trial Tr. vol. 1, 60:15-61:1, are enough for a jury to conclude that he knew she was engaged in prostitution, as (particularly viewed in a light favorable to the Commonwealth) this is indicative of coordination regarding Harriet's encounters. Moreover, when the defendant was later arrested in Harriet's company, he had substantial amounts of cash while Harriet did not have on her person even the minimum amount of what Hall had testified she might have earned for the sex acts she had purportedly just performed. _See Barbosa_, 2010 WL 680349 at *1. This is enough for a jury to conclude that Logan had taken the money she had just earned. _Id._ Lastly, Andrade's testimony – addressing both

Harriet's birthday and the fact that Harriet was an adolescent attending school – was enough to permit a jury to find that Harriet was a minor.  The weight of all of this evidence is more than enough to convince this Court that the Appeals Court was not unreasonable in ruling the Jackson standard met. Accordingly, Logan's petition cannot be granted on the ground that there was insufficient evidence to support his conviction.

### 4.    Scope of Everett Police Investigatory Authority

Finally, Logan argues that because the Everett police detectives who testified at trial testified regarding events they witnessed in Chelsea – an area outside the geographic scope of their statutory authority – their observations violated the Fourth Amendment prohibition of unreasonable searches and seizures and ought be suppressed as fruit of the poisonous tree. See Pet.'s Supp. Mem. 21-24.  In response, the Commonwealth argues that this ground for the petition rests entirely on state law and is thus not cognizable in federal court.  See Resp't's Mem. 17-19.

Distilled to its essence, Logan's claim suggests that an alleged violation of state law requires suppression under the Fourth Amendment.  The Fourth Amendment gloss to this argument is being raised for the first time in Logan's federal habeas petition, as the issue of the propriety of the officers' observation testimony rested solely on state law when it was

raised on direct appeal.  See Barbosa, 2010 WL 680349 at *2

(analyzing whether the officers' testimony violated their state

statutory authority).  If the Fourth Amendment issue is truly

new, then Logan has failed to meet the requirement of

exhaustion, as this petition marks the first time the precise

legal issue has been raised before any court.  See 28 U.S.C. §

2254(b)(1)(A) (forbidding federal courts from granting habeas

petitions if the petitioner has not "exhausted the remedies

available in the courts of the State" that issued the challenged

judgment); Rashad v. Walsh, 300 F.3d 27, 41 (1st Cir. 2002)

("[T]o achieve exhaustion, the petitioner must have presented

both the factual and legal underpinnings of his federal claim to

the state's highest court." (citing Scarpa v. Dubois, 38 F.3d 1,

6 (1st Cir. 1994))).  To be considered exhausted, Logan's claim

must be limited to the same one he raised on direct appeal.  If

that is the case, however, the claim is not cognizable before

this Court, as federal courts are not empowered to grant habeas

relief for an alleged error that was strictly a violation of

state law.  See Mullaney v. Wilbur, 421 U.S. 684, 691 n.11

(1975) (suggesting that state court rulings regarding state law

are binding on federal courts unless a state judgment "appears

to be 'an obvious subterfuge to evade consideration of a federal

issue'" (quoting Radio Station WOW, Inc. v. Johnson, 326 U.S.

120, 129 (1945))); see also 28 U.S.C. § 2254(a) (limiting the

grounds for the granting of federal habeas petitions to violations of the "Constitution or laws or treaties of the United States").

Even if this Court could hear the Fourth Amendment issue, it could not grant Logan's petition on the grounds that the officers conducted their investigation outside the scope of their state-granted authority. First, the violation of a state law cannot itself form the basis for a valid Fourth Amendment claim – only a violation of independent constitutional rules can.[6] See, e.g., United States v. Coleman, 162 F. Supp. 2d 582, 586 (N.D. Tex. 2001) (finding that even though police officers broke state law by making an arrest outside the geographic scope of their authority, this state law violation was immaterial to whether there was a Fourth Amendment claim). Second, the officers who testified at Logan's trial broke no federal constitutional rules. Their observations of Harriet were permissible, see United States v. Knotts, 460 U.S. 276, 281–82 (1983) (affirming that visual surveillance of actions in public places cannot be a Fourth Amendment violation), and these

---

[6] The Court also notes that even if a state law violation could support a Fourth Amendment claim on its own, there was no violation of state law here – when Logan questioned the authority of the police officers on his direct appeal, the Appeals Court found that the relevant rules only limited the officers' authority to make stops and arrests, not their authority to make observations. See Barbosa, 2010 WL 680349 at *2.

observations gave them reasonable grounds to believe that Logan had committed a felony and to arrest him without first obtaining a warrant, see United States v. Watson, 423 U.S. 411, 417 (1976) (articulating the standard for probable cause permitting a warrantless arrest).  Accordingly, for multiple reasons, the purported impropriety of admitting the officers' observation testimony cannot support Logan's petition for a writ of habeas corpus.

## III. CONCLUSION

For the aforementioned reasons, Logan's petition for a writ of habeas corpus, ECF. No. 1, is DENIED.

**SO ORDERED.**

_/s/ William G. Young_
WILLIAM G. YOUNG
DISTRICT JUDGE